IN this cause, tbe question was, whether tbe right to money, due to a bankrupt, from citizens of this commonwealth, was so transferred to the assignees of bis effects that a british subject, who was a creditor of the bankrupt, resident in England, and did not clame any benefit from the assignment, could recover satisfaction for his demand out of tliat money ? upon which the court, tbe 26 day of September, 1794, delivered this
*299 OPINION.
That the question controverted between the parties, in this cause, which is, in truth, a question between british creditors, on one side, and the assignees of a british debitor or debitors, declared a bankrupt or .bankrupts, according to the laws of their country, on the other side, discussed before an american court, should be decided by those principles which ought to govern the decision, if the same question were discussed before an english court; and that by the english statutes concerning bankrupts, all the personal property of a bankrupt, wherever it be, is so transferee! to the assignees that an english subject cannot recover a debt, contracted before the assignment, by an action against the bankrupt himself, or satisfaction for it out of his effects in the hands of others, although a creditor, who is not a british subject, and consequently not bound by the laws of Great Britain, (a) and perhaps too a british subject not having a domiciliara in England, (b) may recover such debt, by an action against the bankrupt, or satisfaction for it out of his effects.
In consequence of which opinion the bill was dismissed.
*302 CASE UPON THE STATUTE FOB DISTRIBUTION.
On the words, ‘provided that there be no representations admitted among collaterals, ‘after brothers and sisters children,’ which are literally transcribed into our statute, english courts have decided that the collateral kindred, whose representatives succede to tbe shares, to which their parents, if they had been living, would have succeeded, must have been brothers and sisters of the intestate :
So that although B, tbe surviving brother, and D, tbe child of C, a deceased brother, would succede to the goods, of A, dying intestate, and childless, &c. .
Yet B, the surviving uncle, should succede to all, excluding D, the child of C. a deceased uncle, from succession to a part of the goods of A. in tbe same circumstances.
So, if B, and C, had been nephews of A; or if B, had been the uncle and 0. the nephew, who, by the case in 1 Atkyns rep. 454, or in equal degree of kindred to A.
The argument of Norik, C. J., (in T. Ray. Rep. 496,) in support of these decisions, examined by the Chancellor; who holds that
The children of those next of kindred to the intestate in equal degree, however remote, are not excluded from succession, to the portion to which their stock, if living, would have succeeded. His reasons for such an explication of the Statute,
ONE, wbo had occasion lately to consider tbe question, arising on a paragraph of tbe statute, enacted by tbe general assembly of Virginia, in tbe year 17(5, for distributing the goods of an intestate,* disagreeing with english judges in their exposition of the same paragraph, in their statute for that purpose, submits to censure the following result of his disquisition, not without hopes of shewing, as be hath endeavored to shew in other instances, that the judicial determinations in England do not deserve the respect with which they are honored in this country.
By the 22 & 23 Car. 2. Cap, 10, it is enacted, (that all ordi- ‘ naries and ecclesiastical judges, upon granting administration • of persons dying intestate shall take bond of the administra- ‘ tor, with two, or more sureties, with condition that the admin- £ istrator shall make a true and perfect inventory of all the goods ‘ and c#atels of the deceased, and exhibit it in the registry of 1 the ordinarys court, by such a day, and that the said ordinaries, ‘ and judges respectively shall and may, and are enabled to pro- *303 ‘ caed and call such administrators to account for and touching ‘the goods of any person dying intestate, and upon hearing ‘ and due consideration thereof, to order and make equal and ‘just distribution of what remaineth clear (after all debts, fene- ‘ rals, and just expenses of every sort first allowed and deduct- ‘ ed) amongst the wife and children, or childrens children, if ‘ any such be, or other wise to the next of kindred, to the dead ‘person, in equal degree, or legally representing their stocks, ‘ pro am cuique jure, according to the laws in such cases, and. ‘ the rules and limitation hereafter set down; and the same dis- ‘ tributions to decree and settle, and to compel such admiuistra- ‘ tors to observe and pay the same, by the due course of his ‘ majesty’s ecclesiastical laws.
‘ Provided always that all ordinaries, and every other person, ‘ who by this act is enabled to make distribution of the surplus ‘ of the estate of any person dying intestate, shall distribute the ‘ surplusage of such estate, or estates, in manner and form, fol- ‘ lowing, that is to say, one third part of the said surplusage to ‘ the wife of the intestate, and all the residue by equal portions ‘ to and amongst the children of such persons dying intestate, ‘and such persons as legaly represent such children in case any ‘ of the said children be then dead, other than such child, or ‘children (not being heir at law) who shall’ have- any estate by ‘ the settlement of the intestate, or shall be advanced by the in- ‘ testate in his life-time by portion, or portions equal to the ‘ share, which shall by such distribution be allotted to the other ‘ children to whom such distribution is to be made ; and in case ‘ any child, other than the heir at law, who shall have any es- ‘ tate by settlement from the said intestate, or shall be advanced ‘ by the said intestate in his life time,by portion not equal to the ‘ share, which will be due to other children by such distribu- ‘ tion, as aforesaid, then -so much of the surplusage of the es- ‘ tate of such intestate to he distributed to such child, or chil- ‘ dren, as shall have any land by settlement from the intestate, ‘ or were advanced in the life-time of the intestate, as shall ‘ make the estate of all the said children to be equal, as near as ‘ can be estimated ; hut the heir at law, notwithstanding any ‘ land that he shall have by descent, or otherwise from the in- ‘ testate, is to have an equal part in the distribution with the ‘ rest of the children, without any consideration of the value of ‘ the land which he hath by descent, or otherwise, from the in- ‘ testate.
‘ And in case there be no children, nor any legal representa- ‘ tives of them, then one moiety of the said estate to be allotted to ‘ the wife of the said intestate, the residue of' the said estate to *304 ‘be distributed equaly to every of the next of kindred of the ‘ intestate, who are in equal degree, and those who legally ‘ represent them.
‘ Provided that there be no representations admitted among ‘ collaterals after brothers and sisters children ; and in case there ‘be no wife, then all the aid estate to be distributed equally to, ‘ and amongst, the children ; and in case there be no child, ‘ then to the next of kindred in equal degree of or unto the in- ‘ testate, and their legal representatives, as aforesaid, and in no ‘other manner whatsoever.’
This statute differs not materialy from the Virginia statute, on the same subject, otherwise than that the latter appoints the next of kindred by the father, if no children be, to succede with the wife.
On the words, ‘provided that, there he no representations ad- ‘ mitted among collaterals, after brothers and sisters chil- ‘ dren,’ which are literaly transcribed into our statute, english courts have decided that the collateral kindred, whose representatives succede to the shares, to which their parents, if they had been living, would have succeeded, must have been brothers and sisters of the intestate:
So that although B, the surviving brother, and D, the child of C, a deceased brother, would succede to the goods of A, dying intestate, and childless, &e.
Yet B, the surviving uncle, should succede to all, excluding D the child of C, a deceased uncle, from succession to a part of the goods of A, in the same circumstances.
So if B, and C, had been nephews of A: or if B, had been the uncle and C, the nephew, who by the casein 1 Atkyns rep. 454, are in equal degree of kindred to A.
The reasons of these decisions, explained in a celebrated argument of chief justice North, with which T. Raymond hath crowned his book of reports, p. 406, more fully than any where else, shall he here examined.
His first reason is, ‘ all other relative terms generaly ex- ‘ pressed through the whole act have the intestate for their eor- ‘ relative, so (wife) is meant wife of the intestate, (children)are ‘ children of the intestate, (heir at law) is of the intestate, so ‘that, in the most plane and obvious sense, the intestate ought ‘ here to be taken for the correlativé to the words brothers and ‘sisters.’
Observations : first, until the connection between his proposition ‘ all other relative terms generaly expressed through the ‘ whole act have the intestate for their correlative,’ and his inference. ‘ so that in the most plane and obvious sense of the *305 * words, ‘ that there be no representations admitted among col- ‘ laterals after brothers and sisters children,’ theintestate ought ‘ here to be taken for the correlative to the words ,brothers and ‘ sisters, ’ which connection hath not been discerned, be proved, the inference is a non sequitwr.
Second, this ratiocination isa mistake of the question, which is not of what tribe of collateral kindred, whether brothers, uncles, nephews, &c. the children shall represent their parents, but, to what degree tbe representation of those collateral kindred, who if they were not dead, would have succeded, shall extend, if these restrictive words had not been inserted, descendents of collateral kindred, more remote than their children, would have legaly represented them, representatives of nearest kindred may be branched into children, grandchildren, great grandchildren, &c.
Third, the proposition is not true, if he, who stated it, had completed, as fair argument required him to complete,the series of instances in which the suitas, whence the inference was drawn, occurred, he would have found, in one place, after the words, ‘ children of such persons dying intestate,’ the terms ‘ and such persons as legaly represent such children, in ease ‘ any of the said children be then dead,’ which are relative 4 terms, and have for their correlative/ children of such persons ‘ dying intestate ;’ in another place, after the word, ‘ children/ the terms, ‘ nor representatives of them,’ which are relative terms, and have for their correlative, ‘children ;’ in another place, after the words, ‘ next of kindred to the dead p%rson, in ‘ equal degree,’ the terms ‘ representing their stocks,’ which are relative terms and have for their correlative, ‘ next of kindred, in equal degree ;’ in another place, after the words, * next of ‘ kindred of the intestate, who are in equal degree,’ the terms, ‘ and those who legaly represent them/ which are also relative terms, and have for their correlative, ‘ next of kindred of the intestate, who are in equal degree and in another place after the words. ‘ next of kindred, in equal degree, of or unto the ‘ intestate,’ the terms ‘ and their legal representatives,’ which, are likewise relative terms, and have for their correlative/ next ‘ of kindred, in equal degree, of or unto the intestate:’ and the proposition, to be true, ought to have been stated thus: of tbe relative terms, generaly expressed in tbe act, some have the intestate for their correlative, others have his children for their correlative, and others have the intestates next of kindred, that is collateral kindred, for their correlative, is the deduction from it, ‘ so that in the most plane and obvious sense, the intestate ‘ ought to be taken for the correlative to the words, brothers and *306 'sisters,’ sound logic? jmt it hath been so deemed in Westminster hall, for almost six score years !
His second reason is, ‘ because the distribution is given by ‘ the act for their relation to the intestate, and not for their rela- ' tion to the collaterals ; therefore the relation mentioned ought ' naturaly to refer to the intestate, and not to the collaterals. ‘ there may be cases put wherein brothers and sisters children ‘ of collaterals may be no kin to the intestate, if they were by ‘ the half blood, and it cannot be pretended that such shall have ‘ a share in the distribution, now why should the words be 'taken in the sense that comprehends those, that have no title ‘to distribution?’
Observations : first,-‘ that distribution is given, by the act, to ‘ next of kindred,for their relation to the intestate,’ is admitted : that the legislature, moved by the same consideration, called the representatives of collateral kindred to succession in place of him or her for whom they are substituted is admitted also ; and most frequently such representatives are of kindred to the intestate ; and when the case shall happen otherwise it is not so unreasonable as at first it might seem ; because, he who is represented, if he had survived the intestate, and received his share, is presumed to have designed to will it, when he should die, to the same representative, who may not be of kindred to the intestate, but the statute having appointed representatives of collateral kindred, in general terms, to succede to the shares of their stocks, the argument, that representatives who are not of kindrgd to the intestate, may in some cases succede, if such succession be unreasonable in those cases, doth not conclude against representatives who are of kindred to the intestate, the conclusion then, which ought to have-been particular, is universal, and the argument vitious.
Second, a position, here taken for granted, that the representatives of defunct collaterals, even so near as brothers, must be of kindred to the intestate, may be proved, by necessary consequence from westmonasterian authority which may be a good argumentum ad hominem, to be untrue, thus :
The case between Smith and Tracey (2 Mod. rep. 204) was, A dies intestate, having three brothers B, C, and D, of the whole blood, and a brother, E, and a sister F, of the half blood : and, by judgment of the court of kings bench, 28 and 29, Car. 2. the brother and sister of the half blood E, and F, succeeded to A’s goods and credits, taking equal shares with his brothers of the whole blood, B, 0, and D. ‡
*307 Vary the case, by supposing E and F, to have died, leaving children, in the life time of A; these children, representing their parents, would have succeded to their shares, being the children of a brother and sister.
This will, as is believed, be granted.
Then vary the case again,by supposing the mother of E, and F, who appear by the opinion of the court not to have been uterine brother and sister of A, B, C, and D, to have borne G-, and H, children, by another husband, and E, and F, to have left no children ; G and H would have represented E, and If, as legaly as the children of E and F, and would have succeded to the same shares.
This is believed to he a consectary from the judgement in the case between Smith and Tracy.
Aet G and H would have been, in Norths language, ‘ no kin to the intestate’ A.
Third, the question, at the end of this second reason as it is called, ‘ why should the words’ (they were the words provided that there he no representations admitted among collaterals, after brothers and sisters children) ‘ be taken in the sense that ‘ comprehends those that have no title to distribution,’ is nota question for which those words taken in any sense, of which they are capable, can minister occasion, other parts of the statute ‘comprehended those that have title to ‘distribution,’ dividing collaterals, who should succede, into two classes. they were distinghished by these characters, first, ‘ next of kindred,’ who must be in the same degree, or in equal degree ; and,second, ‘ their legal representatives,’ that is,therepresentatives of those, who are next of kindred, the former were defined by the terms, ‘ next,’ and ‘ in equal degree,’ the latter were undefined, otherwise than that they must have been in existence, at the death. of the intestate, they might have been children, grand children, great grand children, or more remote, in some of which cases the portions would be inconsiderable, to prevent this were the forecited words inserted, they do not declare, because unnecessary would have been here a declaration comprehending those collaterals, or kindred, whose representatives should be intitled to distribution, they do nothing more, as hath already been observed, than terminate the progress of representation, in the immediate offspring from the collaterals,providing that representation shall not be admitted, after brothers and sisters children, that is, shall not be admitted in any degree of kindred after, or more remote than, the children of brothers and sisters children, that is, shall not be admitted in any degree of kindred after, or more remote than, the children of brothers and sisters, *308 and (one, who feels the argumentimi ad judicium more forcibly than the argumentum tt-d verecundiam, as I. Locke, in his essay on human understanding b. iv. chap. xvii. § 19—22, calls them, ventures to add) brothers and sisters of the collaterals, in the words, 1 provided that there be no representations admitted among collaterals, after brothers and sisters, children,’ interpreted consistently with the sense of them, which is complete, and without interpolation, for which no cause appeareth, the legislature contemplated a single object, namely, the limit beyond which the right of representation shall not be asserted, but the author of this argument will have it, that the legislature contemplated, besides that, another object, namely the collate-rals, the right of whose representatives shall not be asserted, this is the second instance, but is not the last, of a mistake of the question for it occurs in two other parts of this composition by North.
His third reason is, £ because as these words provided that here be no representations, &c. ‘comprehend’ (comprehend again) ‘more than ought to have distribution in some instances, ‘so they fall short, and leave out many, that by parity ofrea- ‘ son ought to have distribution, and therefore this sense, they would put upon the words, is very improper.’
‘ As for instance :
‘Suppose (he next of kin are nephews, by several brothers, ‘and some of them are dead, leaving children, these children ‘ are not brothers children to the collaterals, and cannot within ‘ the words,’ provided, &c. ‘ clame’ although, by the way, the children must clame, if they can clame at all, not by those words, which give to no one) ‘ any share ; but if by chance any ‘ of them, had had uncles surviving, then they had been broth‘ers children to the collaterals,’
‘ So, if the next of kin are cousin gertnans, and some of them ‘ are brothers to one another,: others are not; the children of ‘ such as them as had brothers that survived the testator,) it ‘ should be intestate) shall have a share, but the children of such ‘ who had no surviving brothers shall have no share which is ‘ most absurd, for they ought to have a share as they relate to ‘ the intestate and not as they relate to the collaterals.’
Observations: first, the question, upon the words, ‘ provided ‘ that there be no representations, admitted among collaterals, ‘ after brothers and sisters children,’ is, as before, not who are ‘ comprehended by the words brothers and sisters’ but, beyond what degree of kindred, the representatives of collaterals, whosoever those collaterals be, shall or shall not succede?
Second, in the first example, for illustration of the third rea *309 son, is taken for granted this position : the brothers and sisters of collateral kindred, whose representatives, not more than children, shall suceede must all, by the words of the statute, be crovadstyoi—brothers and sisters every one of every other— brothers and sisters by the same parents, or by one common parent; a position, if not admitted, necessary to be proved, because, without it, a concatenation of the premises and the conclusion from them, stated in this third reason, is defective, the position is not admitted, but, on the contrary, its redargntion, to be here essayed, byr the medium of that example, varied for adapting the position to cases equaly within its scope, is not despaired, for,
Suppose the nearest kindred o+' A to have been B and C, sons of a deceased brother, and D and E, daughters of a deceased sister ; R and D to have died in the life time of A, both leaving children, the former F and G and the latter H and I ; and afterwards A to have died intestate, without alteration in his family, of F, G, H, and I, may be truly predicted, that they are brothers and sisters children ; for by the hypothesis the lather of F and G is the brother of 0, and the mother of H and I is the sister of E ; so that F and G are children of a brother and H and I are children of a sister; and that which is true of each pair of children must be true of both, consequently the position is false. But if F, G, H, and I, were children of different parents, so that neither oí them had a brother or sister, it would be nothing to the purpose, as will appear.
Third, an absurdity, by the second example, attributed to the exposition, admitting representation of collateral kindred, who were not brothers and sisters ot the intestate, is a consequence of two sophisms, already detected in the argument of North, one ignoratio elenchi, or a mistake of the question, the other a peJitidprincipii, or a supposition of what is not granted, and if, ‘ that, the children of such cousins german, as had brothers, ‘ that survived the intestate, shall have a share but the children ‘of such, who had no surviving brothers shall have no share ‘ be most absurd,’ as he says, which is not denied ; this argument may partly shew the pravity of his interpretation.
Of the scholia appended to this third reason, that, which supposeth, for the words, ‘ provided that there be no re prese nt-a- ‘ tions admitted among collaterals after brothers and sisters ehil- ‘ dren,’ if the legislarme had not designed to exclude from succession representatives, more remote than brothers and sisters children of the in testate, would have been substituted the words, ‘ provided that there Vie no representations admitted among col- ‘ laterals after their children,’ shall only be noted, because no *310 other is thought to deserve notice, and this for the purpose of answering, that the former may be interpreted and ought to be interpreted, 5» the sense of’the latter, which answer is proposed to he verified in the «equal.
His fourth reason is, ‘ because the excluding representations ‘ in a remote degree agrees with the reasons, upon which distri- ' bution is grounded, for 1, nephews and nieces to the intes- ‘ fate are of so near relation, the intestate having been as a pa- ‘ rent to them, that they are of great regard, whereas remoter 'degrees have no regard but for their proximity (because there ‘ are none nearer) and therefore no reason to admit represersta- ‘ tions amongst them, to bring in a more remote degree to share ' with those that are nearer of kin. 2. again, nephews and ‘ nieces cannot be many, so that the division cannot come into ‘ very many parcels ; but in a remote degree there may be very ' many of the same degree, and to admit a subdivision to the ‘ children of any deceased would make the shares of such chil- ' dren very inconsiderable, not worth demanding.’
Observations: first, the reason, upon which distribution is grounded, is an intestates affection lor all his kindred, more or less warm, as the objects of it were related to him nearly or remotely ; a therrnometre, analogous with which the portions of the distributable subject are graduated ; successors nearest, and in the same degree, taking equal portions, and successors in a remoter degree taking the portions, not of themselves who are not, but of their stocks, who were, in the same degree, if so, the position, that, ‘ excluding representations in a remote de-1 gree, agrees with the reasons upon which distribution is ‘ grounded,’ is so far from being true, that representations, among lineal successors, are admitted in remotest degrees, and among collaterals, would as extensively have been admitted, (in every case where they are designated by the appellation, ‘ next of kindred,’ the words, ‘and their representatives,’ or words of tlie same import, immediately following) if the representations had not been abscinded, by other words, after the degree of brothers and sisters children, whose brothers'and sisters will he a fitter subject of enquiry elswhere.
Second in the phrase, 'representations in a remote degree,’ the term 1 degree’ may mean the degree of kindred, either between the representatives and their stocks, or between the intestate and his collateral kindred, in the former sense, the reason is not to the purpose ; for no man denies that representations are not admitted among collateral kindred, whosever they he, after or beyond the degree of brothers and sisters children ; in the latter sense, the reason is not more pertinent, if the ob *311 ject, which the words of the statute, truly interpreted, shew the legislature to have contemplated, was to declare, not of what collateral kindred representation shall not be admitted but, alter or beyond what degree of kindred between the colla-terals surviving, and the representatives of those who were dead, representation shall not be admitted : and that this was the object iiath been partly, as is believed, and will hereafter be perhaps fully proved, the notion stated in this reason, of ; the ‘ intestates having been hs a parent to his nephews and nieces,’ seemeth altogether imaginary,§ and the argument drawn from the remark, that when the multitute of successors is numerous, the portions of representatives, by means of subdivisions, would be inconsiderable and worthless, which, however, would not happen so frequently as the contrary, is notan argument against the right of a representative to his modicum, if the words of the statute have in titled him to it. the argument, if it prove any thing, proves that the statute ought not to have admitted, not that it did not admit, representations, wherein those subdivisions would be necessary.
His fifth and last reason is, ‘because, by the opinion of the ‘ learned, the law and practice of the spiritual courts before this ‘ act did exclude all representations of collaterals, after the in- ‘ testates nephews and nieces.’ to which he adds, ‘ the whole ‘ scope of the act was to make their jurisdiction as to distribu- ‘ tion legal, which before was condemned by the kings courts, ‘ and the words of the act (legaly representing) (pro suo cuique ‘jure) and according to the laws in such cases (and the rules ‘ and limitation * set down) shew that there is a reference to ‘ their laws, now if there were an opinion this way before the ‘ act; there is great reason to believe, this clause, ‘ provided ‘ there be no represenfations, admitted among collaterals after 4 brothers and sisters children,’ was founded upon that opinion.’
Observations : first, we might learn from North himself, for in the introduction to his opinion and reasons he admits, ‘that ‘ all acts of parliament are to he expounded according to the true ‘ meaning to be collected from the words of them ; and that ‘ must be a rule in this case,’ to which rule however he doth not appear in a single instance throughout his argument to have adverted. hé flew the way at Ihe start, and never recovered it. to prove that this act of parliament, if it be expounded accord *312 ing to that rule, contradicts the law and practice, as they have been stated, of the spiritual courts, in this particular instance, will be attempted, and if the attempt be successiull, there is no `reason to believe the clause in question was founded upon the opinion of those courts, and to expound it that way ;` that i8 to expound the clause, which, in the only sense whereof it is capable, with out interpolation, is reconcileable with other parts of the act, so as to contradict those other parts of the statute.
Second, the terms, `legaly representing,' and `pro suo cuique jure,' are intelligible surely without reterence to the laws of ecclesiastical courts; the words, `according to the law in such. cases,' if they refer to their laws at all, refer perhaps to those only, by which degrees of consanguinity are computed; and the words, `rules and `imitations set down,' which are defèc-tively quoted, and which in the statute are, `the rules and limi`tation HEREAFTER set down,' sliew that t~ reference is, NOT to THEIR LAWS but, to the STATUTE.
After his reasons, the chief justice procedes to solve objec-tlOfl8 to his argument. of the solutions notice shall be taken of that only, which is in these words: ` i conf~ss a law clearly penned shall have its force in cases which it does reach, though it does not reach all cases: but where a law is penned, so that it may be expounded one way or other, and there i8 `a question of the meaning of it, it is more natural to believe `it was meant in that way that is clear, and reaches all cases `that are in parity of reason, than in that way which has ab`surd consequences, as this hath, both by including those `which were not intended, and leaving out those which stand `in the same degree, as i shewed before.'
Ob~servations: first, the statute is thought to be so `clearly penned,' that the learned judges of Westminster hail, and th~ `learned doctors of Doctors commons,' who were adjutant mm-isters to the chief justice on this occasion, are challenged to discover in the words of the act, if not sophisticated, that am~ phibolia, which is here attributed to it by the terms, `it may be expounded one way or other.'
Sec~nd, the statute~ understood, `in that way that is clear,' but different from the `way' approved by the chief justice, will reach all cases within the scope of the legislative providence, and will have no `absurd consequences.'
His conclusion is, `1 conceiv~ this act was intended for a `phine rule, and i think it much better to interpret it in the most plane and obvious sense which will establish the succes~ sion of per~onaI estates, according to reason and symmetry `than to strain to find out another sense for the sake of remote *313 £ kindred, that are of no regard, which will produce apparent ‘absurdities, and subject personal estates to faucifull and intricate disputes that will need another act ts compose and settle.’
Observations : first, the act‘ in the most obvious sense’ of the words, that is, the sense, in which the archdeacon of Huntington understood them, is a ‘ plane rule.' they will not bear the sense, in which they are otherwise understood by North, unless after the words, ‘ brothers and sisters children,’ be supplied the words, ‘ ofthe intestate.’ this supplement is called ‘ interpretation,’ and perhaps may be so called by the westmonasterian vocabularies.
Second, the reasons for the interpretation have been examined.
Third, the interpretation, by words which measure degrees between stocks and their representatives, would measure degrees between an intestate and his collateral kindred , and this interpretation matching things not relating to one another is called symmetry ! symmetry not more daedalean than
Humano capiii cervicem pictor equinam Jungere si velit-
Fourth, ‘ another act which North supposed to be needful for ‘ composing and settling the fancifull and intricate disputes’ which he imagined would be raised on this, if his interpretation be rejected, is not the proper remedy for the evil apprehended by him. the remedy would be to give to judges what perhaps the legislature of Great britain have not more power to bestow, than other legislatures, for, if so plane an act as this could be so mistaken, as it bath been by him aud his successors, what would be the effect of another act?
HIS reasons stated in the argument of the chief justice having been examined ; the statute itself shall now be considered, in order to discover the true meaning, from the words, thereof.
The statute,after requiring ordinaries and ecclesiastical judges to take bond from him, to whom they grant administration of the goods and credits of a person dying intestate, with condition to make and exhibit an inven tory of them, enables and requires those ordinaries and judges to call the administrator to render account of his transactions, ‘ and to order and make just ‘ and equal distribution of what remaioet.h clear (after all debts ‘ funerals and just expences of every sort, first allowed and de- £ ducted) among the wife and children, or childrens children, if £ any such be, or, otherwise, to the next of kindred, to the dead ‘ person in equal degree, or legaly representing their stocks,pro- *314 ‘suo cuiquejure, according to the laws in such cases, and the ‘ rules and limitation hereafter set down ; and the same distri- £ butions to decree and settle, and to compel such administrators ‘ to observe and pay the same, by the due course of his rnajes- ‘ ty’s ecclesiastical laws.’
THE phrases, ‘legal represantatives,’ ‘pro suo cuiquejure,’ ‘ according to the laws in such eases,’ and ‘ the rules and limitation hereafter set down,’ are thought by North to prove that the statute had a reference to the ecclesiastical laws, but, 1. if it had such a reference the reference by the first three phrases was only to those laws which determine who are the legal representatives of an intestate next of kindred, which was not pertinent to the question in the case discussed by him, namely, who of the intestates next cf kindred shall be represented ; as batb repeatedly been observed before, not more pertinent is the solution by him of the second objection to his opinion, T. liayrn. p. 505. which solution is thought too trifling to deserve a recital. 2. the fourth phrase,correctly quoted,shews that the statute refered to the rules and limitation set down in itself, this will lead to the true question, namely, whether, by those rules and limitation, representation is admissible among collateral kindred, who are more remote than the intestate brothers and sisters ?
The rules in the statute, mingled with the limitations (for of these are two) so that their connection is interrupted, stated separately for the sake of perspicuity, are,
‘ Provided that ordintries and every other person, by this act ‘enabled to make distribution of the surplus of the estate of ‘ any person dying intestate, shall distribute the surplusage of ‘ sugh estate in manner and form following that is to say, one ‘ third part of the said surplusage to the wife of the intestate, ‘ and all the residue by equal portions to and amongst the chi 1- ‘ dren of such persons dying intestate and such persons as le- ‘ galy represent them, in case any of the said children be then ‘ dead, and in case there be no children, nor any legal represen- ‘ tatives of them, then one moiety of the said estate to beallot- ‘ ted to the wife of the said intestate, the residue of the said es- ‘ tate to he distributed equaly to every of the next of kindred of ‘ the intestate, who are in equal degree, and those who legaly * represent them, but in case there be no wife, then all the ‘ said estate to be distributed to and amongst the children, and ‘ in case there be no child, then to the next of kindred, in ‘ equal degree,of or unto the intestate,and their representatives, ‘as aforesaid, and in no other manner whatsoever.’
Of the rules, those which call children of the defunct, and *315 representatives of such of them as may be dead, to the succession, are without any limitation, otherwise than that, a child who had been advanced by settlement of the defunct, with a portion not equal to the filial portion, can clame only the cora-plimént, or so much as with the advancement added to it will be equal to the filial portion, out of the distributable subject, but such forisfamiliated child, if he were au heir at law, and advanced by settlement of land upon him, shall have a full portion of the surplus.
The rules, which, if no children or representatives of them be, called the next of kindred to the succession, comprehend,
First, those kindred who are in the ascending line, that is, father and mother, &e. for the opinion in |he duchess of Suffolk’s case, ‘that the mother is not of kin to her child,’ although unanimously once approved by numbers of temporal, as well as ecclesiastical, judges sufficient to entitle it to a place among what are called authorities, seemeth to have been since reprobated, the right of the mother indeed, if the father be living, is transf'ered to her husband ; but if he were dead, she the whole before the statute of 1 James 2. ordained a communion with brothers and sisters and their representatives: and if no parents be, the rules comprehend,
Secondly, those kindred who are in the collateral line, and who may be analysed into brothers and sisters ; if none such he, uncles and aunts, and nephews and nieces ; (for, according to the determination of a case before mentioned to be reported by T. Atkyns, 1 vol. p. 454 they are in the same degree of ra-lation) if none such be, cousins german, &c. of the intestate, and those rules, if not controuled, by the limitation, with the words, ‘ and their legal representatives,’ applied to ever}' rgnii-fication of the syllabus, ‘ next of kindred,’ may be read thus:
In case there be no children nor any legal representatives of them, the said estate to be distributed equally to the brothers and sisters of the intestate, and their legal representatives ; if none such be, to be distributed equaly to the uncles and aunts and-nephews and nieces of the intestate, and their legal representatives; if none such be, to be distributed equaly to the cousins german of the intestate, and their legal representatives ; and so forth ; the words, ‘ and their representatives,’ being added after every tribe of the intestates kindred, in equal degree.
These evolutions of kindred and applications of representatives are the sense and meaning of the rules, without the limitation, in explicit terms¿ so that
The question is reduced to this : whether that sense and that meaning are altered by this limitation : ‘ provided that there be *316 ‘ no representation admitted among collaterals after brothers ‘ and sisters children, otherwise than that no representatives ‘shall be admitted among collaterals in any degrees pore re- ‘ mote from their stocks than children ?’
That they are not altered otherwise will appear, as is conceived, without : straining,' by inserting the limitation after every one oí the tribes of collateral kindred and their representatives : when the rules, united with the limitations oí them, will be read,
‘In case there be no children, nor any legal representatives of them, the said estate to be distributed eqnaly to the brothers and sisters of the intestate,and their legal representatives provided that there be, no representations admitted among [these] collaterals after brothers and sisters children ; if no brothers and sisters be, to be distributed eqnaly to the uncles and aunts and nephews and nieces of the intestate, and their legal representatives ; provided that there be no representations admitted among [these] collaterals after brothers and sisters children ; if no uncles and aunts and nephews and nieces, or any such, be, to be distributed eqnaly to the cousins german, of the intestate, and their legal representatives ; provided that there be no representations admitted among [these] collaterals, after brothers and sisters children ; and so forth,
■ According to this reading, liable to a single objection which shall be removed, the children of those next of kindred to the intestate in equal degree, however remote, are not excluded from succession, to the portion to which their stock, if living, would have succeeded.
Harmony by this reading is produced of all parts of the statute one with another, not a single word thereof being understood in a ‘strained ’ sense, or in any other than the ordinary sense ; and the system of successio m bcna defunetorwn hath perfect symmetry ; every rule being applied to one or other tribe of the intestates kindred, whose representatives are appointed in the places of their stocks to suceede ; and the limitation being commensurate with the i ules in every instance, except that the operation of one which would have included representatives in all degrees, is restrained by the other, ■ . ■ office of which was, Dot to destroy any rule but, to limit the extént of it, excepting the representatives of collaterals of all denominations, alter or beyond the degree of children of tl. - collaterals, who may have died before the intestate.
Not to allow the ‘ rules set down in the statute,’ tobe a¡: cable to representatives of every tribe of collaterals, would. in the phrase ‘ next of kindred of. or unto, the intestate, in equal *317 ‘ degree, and those who legally represent them,’ deprive the words, ‘those who legally represent them,’ of more than half their meaning, and would deprive the words ‘ in equal degree,’ if they have any, of all, meaning.
The words ‘ in equal degree,’ applied to those collaterals, who survive and suecede in their own rights, repeat the substance of the words, ‘ next of kindred,’ and therefore signify nothing ; for collaterals, not in equal degree, that is in a more remote degree, cannot be next, of kindred to the intestate, but the words, ‘in equal degree,’ supposed to have been inserted for some purpose, are significant, applied to dead collaterals, who, if living, would have been in equal 'degree with the survivors, and may be understood in the sense which this paraphrase of the rule and limitation expresses:
‘ The surplusage to be distributed to the next of kindred to ‘ the intestate, and [if any of them] who are in equal degree [be ‘ dead to] their representatives, provided [although representa- ‘ t-ions are admitted among children of the intestate, How re- ‘ mote soever those lineal representatives be from their stocks, ‘ yet] that there be no representations admitted among colla- ‘ terals after [if the representatives be more remote in degree ‘ from their stocks, than] brothers and sisters children.’ this will be congruous with the antithesis, intended manifestly by the legislature, of childrens representatives to collaterals representatives: whereas North imagined the antithesis to be of the representatives of one tribe of collaterals, that is, brothers and sisters, to the representatives of all other tribes of colla-terals.
Here, indeed, the words ‘ in equal degree,’ are .taken out of their places, and transfered to other places, hut the metathesis is thought to be justified by this consideration : immediately after the words, ‘ next of kindred of or unto the intestate, who ‘ are in equal degree,’ the words, ‘and those who legaly repre- ‘ sent them,’ and after the words, ‘next of kindred, in equal ‘ degree, of or unto the intestate,’ the words, ‘and their legal ‘ representatives,’ prove incontestably, that the legislature, who must have known, that the degree of an intestates kindred could not he the same in all cases, contemplated representations among the kindred in the different degrees, and meaned to admit representations in all cases, where the kindred to be represented and those who succeeded in their own rights were in equal degree of kindred to the intestate.
This meaning appeareth so manifest that, to make it more so is not the intention of the paraphrast. he intended to shew that the meaning of the words, ‘in equal degree,’ removed from the place where, if not unite, their "voice is no more than *318 useless tautology, conspires with the supposed design of the legislature.-
The proviso therefore, that there be no representations admitted among collaterals after brothers and sisters children, is an exception to each general rule.
The objection to which the explication, opposite to Norths interpretation, of the statute, was mentioned to be liable, as it is stated in his language, is ‘ that, as it would comprehend ‘ more than ought to have distribution, in some instances, so ‘ it falls short, and leaves out many that, by parity of reason, ought to have distribution.’ these words occur, in his third reason ; and the substance of them is repeated (T. Baym. 605) where he commends the interpretation ‘ in his way,’ affirming that by it the statute ‘ reaches all cases, that are in parity of reason,’ and prefers it to the explication in that ‘ way which,’ according to him, * hath absurd consequences, both by inelud- ‘ ing those which were not intended, and leaving out those, ‘ which stand in the same degree.’
The objection supposeth the proviso, containing the limitation or exception, to be the part of the statute, by which representatives of collaterals clame the shares of their stocks:
but untruly ; for they must clame, if they can clame at all, by those parts of the statute to which that exception is applicable. But let the objection be to the foregoing application of both, or either.
The objection and the answer to it will be understood best by references occasionally to the cases exemplified in the schemes subjoined.

In the first scheme D. and F, surviving nephews, if they were next of kindred, to A, the intestate, would suceede, being comprehended in that part of the rule, which is contained in these words of the statute, ‘ the surplusage to be distributed to the next of kindred, ‘of or unto the intestate.’ G, the child of E, is as much comprehended in the remaining part of the rule contained in these words of the statute, ‘and their representatives,’ for he is the representative of his father, a deceased nephew of the intestate, and one of his next of kindred, as D and F are comprehended in the former part of the rule, but North objects that G, in the first scheme, is inadmis *319 sible to the saceessioa and cannot represent Ins father, for two reasons, first, the case of G was not comprehended in the proviso, ‘ that there be no representations admitted among coilate- ‘ rals after brothers and sisters children,’ for altho’ he was the child of a brother, bis father was not a brother of the intestate ; and secondly, because, if G in the first scheme should succede, by parity of reason, G, in the second scheme ought to succede too, but the latter is likewise inadmissible doubly, for the collateral, whom be represents was avadeÁéot;—not a brother to the intestate, or to any other man.
. Answer: the words, ‘ provided that there be no representa- ‘ tions admitted among eollateralsafter brothers and sisters chil- ‘ dren, have been proved to be an exception to the general rule, ‘ that distribution be to the next of kindred of or unto the intes- £ tate, in equal degree, and to their representatives.’ if this be so, let be granted, that the case of G, in either scheme, is not included in the exception ; the consequence unavoidable is the reverse of Norths, G would not be inadmissible, but would suc-cede. if the exception had not been inserted, he would have succeded being comprehended in the rule. ‘ the surplusage to ‘ be distributed to the next of kindred and THEIR represen- ‘ tatives ;’ and if he be not included in the exception, his title remains the same as it would have been if the exception had not been inserted, this consequence is said to be unavoidable, and truly ; unless the interpretation of North, as he calls it, can be maintained, but the interpretation, for the true shape of limitation or exception, exhibits this metamorphosis of it: ‘ pro- ‘ vided, that there be no representations admitted among [any ‘other] collaterals [than those collaterals who are brothers ‘and sisters of the intestate, nor among them] after [the] ‘.brothers and sisters children ;’ which would convert un-naluraly the limitation of a rule or the exception to it, into a rule, and abrogate the statute in more than two thirds of the cases which it would comprehend if not mutilated by this monster, to maintain it a pentad of reasons have been pompously paraded ; but they are all foreigners : none of them being furnished by the statute, were chiefly pressed into the service from Doctors commons, and make no better figure at a review than the band of ‘ tattered prodigals with which 1 Falstaff was ashamed to march through Coventry,’*
The objector supposeth, that G, in the first scheme, and G, in the second scheme, who are confessed to ‘ stand in the same degree,’ and who therefore, if either, ought each, to ‘have a *320 share in the distribution,’ are not in the same predicament, for one was the child of a brother, the other the child of him who never had a brother or sister, or who had survived his brothers and sisters.
But, not to urge that this objection is perverse, first, the word, AFTER, implieth intervals or degrees between the antecedent and consequent terms in any series of arithmetical progression, of the series, to which the proviso containing the limitation or exception refers, the collateral E, is the antecedent or first term, his children is one of the consequent terms, his grand children is the next consequent term, and so on through the series of representatives. the proviso is a canon measuring the intervals er degrees of kindred, not between the intestate and his collateral kindred but, between the collateral and HIS representatives, admitting the second term, and rejecting all the terms AFTER the second, or children ; so that the proviso may be most properly read and understood in this sense :
! Provided that there he no representations admitted among 1 collaterals AFTER [that is, if the degree of kindred between 1 the collaterals and their representatives be remoter than the ‘ degree of kindred between] brothers and sisters [and their]
‘ children ’—most properly, because, without a spurious interpolation, the proviso cannot as is conceived, be understood in any other sense, nor can the objector retort that the words between brackets in the paraphraseareunjustifiableinterpolations, because, if they were expunged, the proviso might undoubtedly be expounded in the same sense without contradicting or altering the meaning of a single word contained in the statute, by this exposition Gr would be in the same predicament in both schemes; the difficulties, which staggered North, will be removed ; and the phantom of absurdities, which bewildered him, and perhaps misguided his followers, will vanish.
If the preceding criticism and lection he not satisfactory,
2. The representatives remoter than children of a collateral, who had no brother or sister, may he included in the proviso hv the argumenium a pari ralione, statutes in compendious and general terms, not animadverting upon subjects of a criminal nature may justly comprehend cases, not precisely described in the text, but equaly within the reason and scope of the legislative providence, in legibus et statulis brevioris styli, extensio facienda est liberius; at in tilts, quae sunt enumerativa casuum particularium, cautius. F. Bacon, de augment, scient. lib. VIII. cap. III. aphor. 17. that this statute, as to the part relating to the present question, is brevioris styli and not enume-rativum casuum particularium must be agreed ; and that the *321 reason for Including in the proviso the representatives of him who had, and of him who had not, a brother, is the same no man will doubt but he who ascribes to the legislature, in matters of such moment, levity more than puerile. ‘ if the next of ‘ kin are cousin germana, and some of them are brothers to one ‘ another, others are not, that the children of such of them as ‘ had brothers that survived the intestate, shall have a sharp, ‘ bu t the children of such who had no surviving brothers shall ‘ have no share,’ North admits would be ‘ most absurd he might have added fantastical and futile, this would have been a good argument for including the children of those cousins german, who had not brothers, in the same predicament with the children of those who had surviving brothers, hut surely not for excluding the latter from the shares which the act gave to them in terms unequivocal, and free from ambiguity.
If representatives remoter than children of a collateral be not included in the proviso, either ex vi terminorum, or a pari ra-tione,
3. The consequence, as hath been observed, is that, the case is a casus omissus, and that will not prevent operation of the statute in cases not omitted.
If the explication, here opposed to Norths interpretation, of the statute be correct, the case of Carter versus Crawley, and other cases, decided conformably with that interpretation, deserve to be ranked with the case of Rose versus Bartlett, Cro. Car. 292. the case of Ratcliff versus Graves et alios 1 Vern. 193. and so many more that
Now mihi si linguae centum sint, oraque centum,
Ferrea vox--

Omnia-percurrere nomina possim.

These animadversions, not intended for those learned judges, learned doctors, learned professors, learned practitioners of law, if any such he, who relish all the crudities which have been disgorged, and admit for true science all the jargon which hath been babbled, and for sage doctrine all the garru-lities which have been prated, at times in Westminster hall, to men of tastes less depraved, judgments more sound, and spirits too liberal to be the slaves of authority, are inscribed by
THE EDITOR.

 Upon the principles stated in the note (e) to the case between Page, executor of Cary, plaintiff, and Pendleton, «fee, defendents, the english statute laws bind english subjects and regulate their personal rights every where, unless the case mentioned in the next following note to this case may be an exception, if an eng-lish subject die intestate, his relations, whom the english statute of distribution appoint to suecede, will be inti tied to his personal estate which may, at that time, be in Virginia, not those relations whom our statute of distribution, so far as it differs from the english, appoints; for example: brothers and sisters of the half blood will share equaly by the one, and but half so much by the other, «fee. if an english trader be declared a bankrupt, and his estate be assigned by those who have the administration of such affairs, in that country, the title of the assignees would be supported, in the courts of this country, and the right of such creditors as are subject to the laws of England would be bound by the assignment.
If the bankrupt happen to have property which lies out of the jurisdiction of the lato of England, if the country; in which it lies, procede according to the principles of well regulated justice, there is no doubt but it will give effect to the title of assignees. by Loughborough, H. Blackstones, reports, p. 69L. this position is too general, and is not sufficiently qualified by what follows it in p. 693.
‘ Solomons vs. Ross, in canc. 26 January, 1764, before rar. justice Bathurst, who sat for lord chancellor Northington. messieurs Deneufviiles, merchants and partners at Amsterdam, corresponded with Michael Solomons and Hugh Ross, merchants in London, on the 18 day of december, 1759, the Deneufvilles sloped payment. on the 1 day of january, 1760, the chamber of desolate estates in Amsterdam took cognizance thereof, and, on the next day, they were declared bankrupts, and curators or assignees appointed of their estates and effects, on the 20 day of de-cember, 1759, Ross, who, was a creditor of the bankrupts to the amount of near *300 3000 pounds, made an affidavit of his debt in the mayors court of London, and attached their moneys in the hands of Michael Solomons, who was their debitor to the amount of 1200 pounds, on the 8-day of march, 1760, Ross obtained judgement, by default, on the attachment, and thereupon a writ of execution was issued against Michael Solomons, who was taken into execution, but, being unable to pay the 1200 pounds, gave Ross his note payable in a mouth ; on which Ross caused satisfaction to he entered on the records of the judgement, a few days after, one Israel Solomons, who had a power of attorney from the curators to act for them in England, filed a bill, making himself and the curators plaintiffs, praying that the defendent Michael Solomons might account with them for the effects of the bankrupts, which were in his hands, might pay and deliver the same over to Israel Sol-omons for the use of the curators, and be restrained from paying or delivering them: over to Ross. Michael Solomons then filed a bill, by way of interpleader, praying an injunction, and that he might be at liberty to bring the 1200 pounds into court, this money was accordingly paid into the bank, in the name of the accountant general, persuant to an order in the court. The decree directed, inter alia, ‘ that the stock purchased with the money paid into the bank should be transferee! to Israel Solomons, for the benefit of the creditors of the bankrupts, anci that Ross should deliver up the note, given by Michael Solomons for 1200 pounds, to be canceled.’ H. Rlackstone, p. 131. in the notes.
Similar decrees were made in two other cases there stated.
.The principle of the decrees doth not appear.
In the first and second, it is supposed to be this ; the laws of Holland divest the bankrupts property out of him, and vest it in the curators or assignees, in that country, for the purpose of distributing the property among his creditors, and that the assignment comprehended the bankrupts right to moneys due to them in England : for
It is a clear proposition, said Loughborough, H. Biackstone, p. 690, not only of the law of England, but, of every country in the world, where law has the semblance of science, that, personal property has no locality, the meaning of that is, not that personal property has no visible locality but that it is subject to that law which governs the owner.
This proposition is not free from ambiguity, the sense intended by the author of it is believed to be this : that the owners right to a personal thing, which is in one country, is subject to disposition of the law of another country, whereof the owner is a member ; and, in that sense, is admitted to be true, with respect to the owner himself,-and to all other people who are members of the same state with him,' but is not admitted to be true with respect to men who are not members of the same community.
The writer of these notes, differing in this point with three capital englisb judges, is aware, that he will be regarded with a fastidious eye by men, whose veneration for the westmonasterian oracles is equal lo thé veneration of the antienis for the dodonaean and delphic oracles; but, when be has reason, the only despot, *to which he professeth unconditional submission, on his side, he will venture to differ with any man. he disapproves the determination in the case between Solomons and Ross, on these considerations,
1. That Ross, if he were an english subject, as he Is supposed to have been, was not bound by the laws of Holland, this is assumed for a proposition incontrovertible.
2. That a creditor, in justice, bath a right to so much of his debitors estate as is equal to the demand, or to a proportion of the estate, if it be not sufficient *301 to satisfy the demands of all the creditors, the truth of this proposition is admitted, by the bankrupt laws both of England and Holland, appointing the assignees in one, and the curators in the other, distributors of the estate among the creditors ; so that the assignees and curators are the trustees for and representatives of the creditors, and are ehosen by them in one, and, perhaps, in the other too.
3. The law which authoriseth this appointraeut, if it do not bind the foreign creditor, can not legaly deprive him of his right to recover what is due to him, because the law was enacted without his consent, either individually, or as a member of the community.
4. The right of Ross to satisfaction for his demand against Deneufvilles out of moneys in the hands of Solomon their debitor, whether, in Loughborongbs language, it had or had not locality, was as much subject to the law which governed Ross, that is the law of England, as the right of the bankrupts to the same moneys was subject to tie law which governed the Deneufvilles, the owners, that is the law of Holland ; and, by the law of England, Ross was authorised to procede as he did to attach those moneys—now where such an opposition between two laws upon the same subject bappeneth, why the law of Holland, which favoured the right of the curators, should prevail against the law of England, which favoured the right of the english creditor, or, in othor words, why the court should have preféred the title of the curators to the title of the creditor using the process of attachment, is not discerned.
The most just mode seemeth to be, in whatever court the matter be discussed, to accomodate it by a proportionable distribution of the bankrupts effects among all the creditors of every country.
If the assignees of an english bankrupt bring suits in this court to recover money due from his debitors, and parties, not english subjects, demand a satisfaction of their demands out of the saute money, the court will appoint a receiver of the money and not allow the assignees any part thereof, until they shall have thrown the effects collected by them into a common fund, for the benefit of all the creditors.
(b) Because, 1, such a subject is not represented in the the british parliament, and, therefore, as is conceived, ought not to be bound by its acts, although the english courts have determined otherwise, and the amertcan courts too, before the late revolution, admitted british subjects, residing in the plantations, as they were then called, to be bound by acts of parliament, the terms of which special}- comprehended the plantations, and 2. The bankrupts effects in England may be all distributed among the creditors there, in some cases, before the creditors in the plan, tations could have notice of the bankruptcy in time to dame their shares.

John Horne Tooke.

This statute ⅛ not now in force; but questions have arisen, are now depending, and may still arise upon it, in cases where tbe intestate died before it was repealed.

 The law here is supposed to be different, see the case of Bailey and Teackle.

 Horace had a different notion of the uncles parental affection towards his nephews and nieces, as may be collected from these words: atenientes patease linguae XII. ode. II. lib. and ne sis patruus mihi. Sat. III. lib. II. v. 88.

 The word ‘hereafter,’ occurs at this place in the statute.

Shaksp. Hear/ IV.